UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

OSCAR DE LA RENTA, LTD.,

               Plaintiff,

      -against-

THE FASHION HOUSE INC.,

           Defendant.

------------------------------------------------------x

ECF Case

08 Civ. No. 01640

JURY DEMANDED

RECEIVED FEB 19 2008 U.S.D.C. S.D. N.Y. CASHIER

## COMPLAINT

    Plaintiff Oscar de la Renta, Ltd., by its undersigned attorneys, Tashjian & Padian, as and for its Complaint herein, alleges as follows:

### JURISDICTION AND VENUE

    1.    This is an action for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 et seq., for federal unfair competition and for common law unfair competition and breach of contract in violation of the laws of the United States of America and the State of New York.

    2.    This Court has jurisdiction of this action pursuant to the Lanham Act, 15 U.S.C. §§ 1121 and 1125(a), 28 U.S.C. §§ 1331, 1338, 1367 and principles of supplemental jurisdiction.

    3.    Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c) in that a substantial part of the events or omissions giving rise to the clams asserted herein occurred in this judicial district.

## THE PARTIES

4.    Plaintiff Oscar de la Renta, Ltd. ("ODLR, Ltd.") is a corporation organized and existing under the laws of the State of New York, having its principal place of business located at 550 Seventh Avenue, New York, New York 10018.

5.    Defendant The Fashion House Inc. ("Fashion House") is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business located at 16633 Ventura Boulevard, Encino, CA 91436.

## FACTUAL ALLEGATIONS

6.    For over forty years prior to the acts of defendants complained of herein, ODLR, Ltd. and its predecessors and affiliates have been in the business of designing original, unique and proprietary women's and men's clothing, accessories and related items. Such clothing, accessories and related items bearing plaintiff's tradenames and trademarks are sold under license by plaintiff throughout the United States and the world, including specifically in this judicial district. These tradenames and trademarks have been used by plaintiff in interstate commerce to identify its goods and services and to distinguish them from goods and services provided by others.

7.    Plaintiff has adopted, registered and used in interstate commerce marks, names and styles involving the word marks "Oscar de la Renta," "O Oscar," "Oscar by Oscar de la Renta," "Oscar Oscar de la Renta" and "Oscar an Oscar de la Renta Company," all in connection with the sale of clothing and sporting goods.

8.    By reason of long and extensive sales of its high quality merchandise, and the advertising and marketing of that merchandise, plaintiff's aforesaid tradenames and marks are widely known and respected by their identification with plaintiff as the source

2

of high quality goods, and said tradenames and marks have developed and now have a secondary and distinctive meaning to manufacturers, retailers and others in the trade of women's and men's clothing, accessories and related items, as well as consumers, who have come to identify plaintiff as the source of products associated with plaintiff's tradenames and trademarks.

9.    Long prior to the commencement of this action, plaintiff applied for and received Certificates of Trademark Registration for these trademarks. These trademarks are used and published in the United States with proper form of trademark notice in the name of the plaintiff.

10.    Plaintiff has duly received from the United States Patent and Trademark Office Certificates of Registrations for, inter alia, the trademarks: (i) registration number 2119455 dated December 9, 1997; (ii) registration number 2132134 dated January 27, 1998; (iii) registration number 3307716 dated October 9, 2007; (iv) registration number 3303388 dated October 2, 2007 (the "O Oscar Mark"); and (v) registration number 3283357 dated August 21, 2007 (the "Oscar by Oscar de la Renta Mark") (collectively, the "Marks"). True copies of each Certificate are annexed hereto at Exhibit A.

11.    As reflected in the annexed Certificates of Trademark Registration, plaintiff's rights in the Marks extend to various items of clothing, sporting goods, jewelry and other merchandise, including shoes.

12.    All of the aforesaid registrations are valid and subsisting, and were valid and subsisting at all times affecting the matters complained of herein, and constitute prima facie or conclusive evidence of plaintiff's exclusive right to use these registered marks in commerce in connection with the specified services and activities.

13.    At all times since the registration of the Marks, plaintiff has been and still is the sole owner and proprietor of all right, title and interest in and to the Marks.

The License Agreement

14.    On or about January 24, 2005 plaintiff and defendant Fashion House entered into a License Agreement (the "License Agreement") pursuant to which plaintiff granted to defendant Fashion House an exclusive, non-assignable license allowing defendant Fashion House to use plaintiff's O Oscar Mark and Oscar by Oscar de la Renta Mark (together, the "Licensed Marks") in the form as directed and approved by ODLR, Ltd. in connection with the manufacture and sale of Articles, as that term was defined in Section 1(c) of the License Agreement to be women's footwear of all kinds. As per Section 12.1.1 of the License Agreement, defendant Fashion House acknowledged that ODLR, Ltd. is the owner of the Licensed Marks.

15.    The License Agreement was to be for a term of five contract years, commencing upon execution and terminating on June 30, 2010.

16.    In consideration for the license granted, defendant Fashion House was obligated under Section 8 of the License Agreement to pay plaintiff royalties at a rate equal to eight (8.0%) percent of Net Sales of the Articles and Close-Out Articles (as those capitalized terms are defined in the License Agreement.)

17.    As part of its royalty payment obligation, Section 8.2 of the License Agreement required defendant Fashion House to pay ODLR, Ltd. a minimum of $210,000 for the First Contract Year (beginning upon the execution of the License Agreement and ending June 30, 2006); $360,000 for the Second Contract Year (beginning effective July 1, 2006 and ending June 30, 2007); $480,000 for the Third

Contract Year (beginning effective July 1, 2007 and ending June 30, 2008); $680,000 for

the Fourth Contract Year (beginning effective July 1, 2008 and ending June 30, 2009);

and $880,000 for the Fifth Contract Year (beginning effective July 1, 1009 and ending

June 30, 2010.  The minimum royalty payment obligations were required to be paid

quarterly in the amounts set forth in Section 8.2 of the License Agreement.

18.    By letter dated January 10, 2008 (the "Notice of Default"), ODLR, Ltd.

advised defendant Fashion House that ODLR, Ltd. had not received the $80,000

minimum royalty payment that was owed on January 1, 2008 for the third quarter of the

Third Contract Year.  The Notice of Default further advised defendant Fashion House

that if it failed to cure the payment default in the manner required by Section 13.1 of the

License Agreement, ODLR, Ltd. "shall have the right to terminate the License

Agreement effective immediately upon notice."

19.    Section 13.1 of the License Agreement states that if defendant Fashion

House failed to make any payment due thereunder, and such default continued uncured

for a period of ten (10) business days after defendant Fashion House's receipt of written

notice of default, ODLR, Ltd. shall have the right to terminate the License Agreement

effective immediately upon written notice.

20.    Defendant Fashion House has been marketing and selling goods bearing

the Licensed Marks since the inception of the License Agreement.

21.    Defendant Fashion House failed to pay ODLR, Ltd. the outstanding

minimum royalty payment specified in the Notice of Default.

22.    Accordingly, by letter dated January 29, 2008 (the "Termination Notice"), ODLR, Ltd, advised defendant Fashion House that ODLR, Ltd. was exercising its right to terminate the License Agreement effective immediately.

23.    Additionally, by a Notice of Default letter dated January 11, 2008, ODLR, Ltd. advised defendant Fashion House that Fashion House had violated the design and design approval process set forth in Section 4.1 of the License Agreement, and that unless Fashion House completely remedied the default in all material respects in thirty (30) days, ODLR, Ltd. shall have the right to terminate the License Agreement as provided for in Section 13.1.3 of the License Agreement.

24.    Section 14.1 of the License Agreement provides that upon the expiration or termination of the License Agreement:

> all rights in the LICENSED MARK, copyrights created as a result of or further to this Agreement, any of the DESIGN SPECIFICATIONS, patterns and/or designs developed by [ODLR, Ltd.] or [Fashion House].... or for use with the ARTICLES, and any samples will automatically revert to [ODLR, Ltd.] [Fashion House] immediately will cease and thereafter refrain from all use of the LICENSED MARK, any trademarks which are similar to the LICENSED MARK and all such DESIGN SPECIFICATIONS, patterns and/or designs and samples. [Fashion House] shall remove all tag and labels bearing the LICENSED MARK from ARTICLES in inventory and otherwise. [Fashion House] shall destroy, or if requested by [ODLR, Ltd.], shall immediately deliver to [ODLR, Ltd.] all DESIGN SPECIFICATIONS, patterns and/or designs, samples and ADVERTISING MATERIALS of all kinds and other items or materials in its possession, custody or control with [ODLR, Ltd.'s] tradename or LICENSED MARK thereon. In addition to the foregoing, at [ODLR, Ltd.'s] request, [Fashion House] shall provide [ODLR, Ltd.] ...information with respect to the sourcing of ARTICLES.

25.    Section 14.2 of the License Agreement further provides that in the event the License Agreement is terminated by ODLR, Ltd. by reason of defendant Fashion

House's default, ODLR, Ltd. shall be entitled to receive immediately all minimum royalty payments due for the remainder of the License Agreement.

26.    As of the date of termination, in addition to the $80,000 owed by defendant Fashion House to ODLR, Ltd. for past due minimum quarterly royalty payments, defendant Fashion House was obligated to pay ODLR, Ltd. $1,640,000 for the minimum royalty payments owed through the end of the License Agreement as required by Section 14.2 of the License Agreement.

27.    Section 7.3 of the License Agreement also obligated defendant Fashion House to pay ODLR, Ltd. an amount equal to two (2%) percent of Net Sales of the Articles for ODLR, Ltd.'s use in connection with corporate and/or image advertising, with such amounts to be reported and paid to ODLR, Ltd. within thirty (30) days following each quarterly date.

28.    As of the date of termination of the License Agreement, defendant Fashion House was obligated to ODLR, Ltd. in the amount of $66,015 for unpaid corporate and image advertising under Section 7.2 that was due for the period ending September 30, 2007, and for amounts owed for the time period October 1, 2007 through the date of termination (such amounts to be determined upon receipt by ODLR, Ltd. from defendant Fashion House of the required sales reports, demand for which was made by ODLR, Ltd. in the Termination Letter.)

29.    In addition to advising defendant Fashion House that the License Agreement was terminated effective immediately, the Termination Letter also requested assurance that defendant Fashion House would comply with its termination obligations, as well as promptly pay ODLR, Ltd. $1,786,015. This amount consisted of the $80,000

for past due royalty payments, $1,640,000 for accelerated royalty payments, and $66,015 for the unpaid corporate and image advertising.

30.     Section 14.3 of the License Agreement also provides that within ten (10) business days from termination defendant Fashion House must deliver to ODLR, Ltd. a schedule of inventory of Articles and Articles in the process of manufacture then on hand as of the close of business on the date of termination.  Defendant Fashion House failed to provide ODLR, Ltd. with the required inventory list.

31.     To date, defendant Fashion House has failed to cure its defaults and remains in breach of the License Agreement, which ODLR, Ltd. expressly terminated as of January 29, 2008.

32.     Upon information and belief, notwithstanding the foregoing and without permission or authority of ODLR, Ltd., defendant Fashion House has continued to offer, distribute, or sell goods bearing plaintiff's tradenames and trademarks, including the Licensed Marks.

33.     As contained at the defendants' website, www.thefashionhouseinc.com, defendant Fashion House is still using plaintiff's tradename and trademarks.

### AS AND FOR A FIRST CAUSE OF ACTION FOR
### TRADEMARK INFRINGMENT

34.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33 of this Complaint, as if fully set forth herein.

35.     By reason of the foregoing, commencing no later than January 29, 2008, defendant Fashion House has infringed and continues to infringe plaintiff's Marks by, upon information and belief, manufacturing, causing to be manufactured, advertising,

promoting, offering for sale and selling, without plaintiff's consent, goods bearing plaintiff's Marks.

36.    Defendant's aforesaid conduct and infringement of plaintiff's rights in the Marks is willful in that defendant knew of plaintiff's Marks, knew of the termination of the license, and thereafter, upon information and belief, continued to manufacture, cause to be manufactured, advertise, promote, offer for sale and sell, without plaintiff's consent, goods bearing plaintiff's Marks. This use of said infringing names and marks by defendant is without permission or authority of plaintiff and has been and continues to be in a manner likely to cause confusion, to cause mistake and to deceive.

37.    The aforesaid continuing acts of defendants infringe plaintiff's United States marks under Registration Nos. 3307716, 3283357, 2119455, 3303388 and 2132134, all in violation of 15 U.S.C. § 1114(1).

38.    Plaintiff is being irreparably injured by defendant's aforesaid acts and has no adequate remedy at law for defendant's continued infringement, which will irreparably injure plaintiff unless defendant is restrained and enjoined from continuing said acts.

## AS AND FOR A SECOND CAUSE OF ACTION FOR FEDERAL UNFAIR COMPETITION

39.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.    Subsequent to January 29, 2008, defendant has had no license, permission, consent or authorization from plaintiff to use plaintiff's tradename or trademarks, including the Marks, in connection with its business or to hold itself out or represent itself as authorized to sell Oscar de la Renta, Ltd. trademarked goods.

9

41.    Upon information and belief, despite the termination of any and all licenses, permission, consent or authorization by plaintiff, defendant has continued to manufacture, cause to be manufactured, advertise, promote, offer for sale and sell goods bearing plaintiff's Marks and to represent and make it appear that it is authorized to sell goods bearing plaintiff's tradename and trademark, including the Marks, and has made such representations and actual sales to customers or potential customers in this district and elsewhere.

42.    Defendant's continued intentional use of plaintiff's tradename and trademarks, including the Marks, in connection with defendants' business as alleged above, constitutes a use in interstate commerce and a false designation of origin or false and misleading description or representation of goods in commerce, with knowledge of the falsity, which is likely to cause confusion, mistake and deception, and in commercial advertising and promotion, misrepresents the nature, characteristics, qualities and origins of defendant's goods, services and commercial activities, within the meaning of and in violation of 15 U.S.C. § 1125(a).  Among other things, defendant's unauthorized use of plaintiff's tradenames and trademarks, including the Marks and continued unauthorized sale of goods bearing plaintiff's tradenames and trademarks, including the Marks, is likely to lead others to the mistaken belief that the business of defendant originates from or is in some way authorized, licensed, associated or related to plaintiff and its business.

43.    Plaintiff has been damaged and, unless defendant is restrained and enjoined, will continue to be damaged by defendant's aforesaid acts.

44.     Plaintiff is being irreparably injured by said unfair competition and has no adequate remedy at law for defendant's continuing unfair competition, and therefore defendant must be restrained and enjoined form continuing said acts.

45.     At all times relevant, defendant has had actual and constructive notice of plaintiff's tradenames and trademarks, including the Marks. Accordingly, the infringing and tortious acts of defendant are intentional, willful and deliberate.

## AS AND FOR A THIRD CAUSE OF ACTION FOR
## STATE UNFAIR COMPETITION

46.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     The unlawful conduct of defendant is being continued willfully and has caused actual confusion and is likely to continue to confuse, mislead, and deceive purchasers, members of the public, and others, and create in the mind of the public the false impression that plaintiff is responsible for or affiliated with defendant and its products containing the infringing tradenames and trademarks, including the Marks, all to plaintiff's immediate and irreparable damage as alleged above.

48.     The wrongful conduct of defendant described herein constitutes unfair competition, and if continued will cause irreparable damage to plaintiff, its goodwill and its tradenames, trademarks, and to its business, general reputation, and reputation in the trade. Such conduct by defendant constitutes a violation of the common law of the State of New York.

49.     The aforesaid acts of defendant constitute inequitable conduct, unfair trade practices, and unfair competition under the common law of New York in that defendant

has thereby misappropriated plaintiff's goodwill, development and promotion of its distinctive tradenames and trademarks, and there is a likelihood of confusion among consumers.

50.    Plaintiff has been damaged and, unless defendant is restrained and enjoined, will continue to be damaged by defendant's aforesaid acts.

51.    Plaintiff is being irreparably injured by said unfair competition and has no adequate remedy at law for defendant's continuing unfair competition, and therefore defendant must be restrained and enjoined from continuing said acts.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT

52.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53.    Plaintiff has performed all of its obligations under the License Agreement.

54.    As set forth above, defendant has materially breached the License Agreement by, inter alia, failing to make the required royalty payments, failing to make the required corporate image and advertising payments, failing to provide the required sales reports, and failing to provide the list of inventory of Articles.

55.    Plaintiff has been damaged by defendant's failure to make the royalty payments and to make the corporate image and advertising payments in an amount not less than $1,786,015, together with interest, costs and attorneys fees and related expenses.

56.    As set forth above, defendant has materially breached the License Agreement by, upon information and belief, continuing to manufacture, causing to be manufactured, advertising, promoting, offering for sale and selling such goods bearing

plaintiff's tradenames and trademarks, including the Marks, after termination of the License Agreement.

57.    Plaintiff has been irreparably injured by defendant's continued breach of the License Agreement set forth above, and unless defendant is enjoined, will continue to suffer irreparable injury.

WHEREFORE, plaintiff prays for an order and judgment against defendants as follows:

A.    Granting plaintiff preliminary and permanent injunctions enjoining defendant and its subsidiaries and respective officers, agents, servants, employees, attorneys, and those in active concert or participation with each or any of them who receive actual notice of this order and judgment:

(i).    From any further use of any name or trademark which includes the word marks "Oscar de la Renta," "O Oscar," "Oscar Oscar de la Renta," "Oscar by Oscar de la Renta" or "Oscar an Oscar de la Renta Company,"

(ii)    From using any other mark, word, name or symbol similar to plaintiff's tradenames or trademarks, including the Marks, which is likely to cause confusion, mistake or to deceive;

(iii)    From infringing plaintiff's rights in its aforesaid tradenames and trademarks, including the Marks, or using any colorable imitation thereof;

(iv)    From continuing the acts of unfair competition herein complained of.

B.    Requesting defendant to send written notice, approved by the Court, to each manufacturer, retailer, customer or other party who has received the infringing goods from defendant, with a copy to plaintiff,

(i)    requesting such recipient to return all such materials to said defendant;

(ii)    offering each recipient a full refund of any consideration paid to said defendant for such materials; and

(iii)    advising such recipients of the pendency of this action and that pursuant to an Order of this Court, said defendant has been enjoined during the pendency of this action from utilizing any infringing tradenames or trademarks, including the Marks belonging to plaintiff, and that any use or sale of the infringing goods will be in violation of said order and judgment.

C.    That defendant be required to deliver up, by a date certain, to be impounded during the pendency of this action, all goods, patterns, designs, sketches, materials, fabrics, samples, labels, tags, catalogs and advertisements imprinted with or containing plaintiff's tradenames or trademarks, including the Marks, and all other infringing goods in defendant's possession, custody or control or which can be recalled from the trade, and all matter for making copies of the tradenames or trademarks of plaintiff;

D.    Awarding plaintiff all of defendant's profits, if any, and plaintiff's damages by reason of the acts of trademark infringement and unfair competition complained of, said damages to be trebled pursuant to 15 U.S.C. § 1117; and

E.    Awarding plaintiff damages against defendant for breach of contract in the amount of not less than $1,786,015, together with interest, expenses, including attorneys' fees and related disbursements; and

F.    Awarding plaintiff punitive damages in an amount of not less than

Five Million Dollars ($ 5,000,000.00) for defendant's willful, deliberate and continuing

infringement of plaintiff's rights continuing after actual and constructive notice of the

same; and

      G.     Awarding plaintiff its costs and disbursements, reasonable attorneys' fees

and such other or further relief as the Court may deem just and proper.

Dated: New York, New York
       February 15, 2008

                         TASHJIAN & PADIAN

                         By: _____
                           Richard G. Tashjian (RT 8065)
                           15 West 36th Street
                           New York, New York 10018
                           (212) 319-9800

                         Attorneys for Plaintiff
                         Oscar de la Renta, Ltd.

Exhibit A

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

## United States Patent and Trademark Office

Reg. No. 2,119,455

Registered Dec. 9, 1997

### TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)
550 SEVENTH AVENUE
NEW YORK, NY 10018

FOR: WOMEN'S CLOTHING INCLUDING EVENING DRESSES, DRESSES, SKIRTS, SHIRTS, BLOUSES, CAPS, ROBES, BELTS, PANTY HOSE, UNDERSHIRTS, SCARVES, SHOES, UNDERWEAR, WARM-UP SUITS, BODY SUITS, T-SHIRTS, SWEATSHIRTS, SWEAT PANTS, SWEAT SUITS, SWEAT SHORTS, JOGGING SUITS, SWIMWEAR, JEANS, LEGGINGS, SOCKS, LINGERIE AND COORDINATED AND RELATED OUTER-WEAR, NAMELY, COATS, JACKETS, BLAZ-ERS, VESTS, SWEATERS AND RAINJACKETS; MEN'S APPAREL INCLUDING CONSTRUCT-ED SUITS, SCARVES, SHIRTS, SHORTS, TIES, GLOVES, HATS, UNDERWEAR, SHOES, WARM-UP SUITS, BODY SUITS, T-SHIRTS, SWEAT SHIRTS, SWEAT PANTS, SWEAT-SUITS, SWEAT SHORTS, JOGGING SUITS, SWIMWEAR, JEANS, SOCKS, CAPS, ROBES, BELTS, UNDERSHIRTS AND OUTERWEAR, NAMELY, COATS, JACKETS, BLAZERS, VESTS, SWEATERS AND RAINJACKETS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 5-0-1965; IN COMMERCE 5-0-1965.

OWNER OF U.S. REG. NOS. 1,334,456 AND 1,665,110.

THE NAME SHOWN IN THE MARK IDENTI-FIES A LIVING INDIVIDUAL WHOSE CON-SENT IS OF RECORD.

SER. NO. 75-178,649, FILED 10-8-1996.

ELIZABETH A. DUNN, EXAMINING ATTOR-NEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

## United States Patent and Trademark Office

Reg. No. 2,132,134
Registered Jan. 27, 1998

### TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)
550 SEVENTH AVENUE
NEW YORK, NY 10018

FOR: WOMEN'S SPORTSWEAR CONSISTING OF KNIT AND WOVEN TOPS, INCLUDING TEE-SHIRTS, FLEECE SHIRTS AND BLOUSES, FLEECE PANTS, SLACKS, JEANS AND RELATED JEANSWEAR, NAMELY, TOPS AND BOTTOMS MADE OF DENIM FABRIC, SKIRTS, SHORTS, LEGGING FOR CASUAL WEAR, COORDINATED AND RELATED OUTERWEAR, NAMELY, RAINCOATS, JACKETS, COATS; KNITS, NAMELY, TOPS, BOTTOMS, AND DRESSES, COATS, SWEATERS, SUITS, DRESSES, BLAZERS, JACKETS AND VESTS, LINGERIE, AND SCARVES, MEN'S SPORTSWEAR CONSISTING OF JACKETS, BLAZERS, PANTS, BUTTON DOWN SHIRTS, BANDED COLLAR SHIRTS, VESTS, TIES, BELTS, KNITS, RAIN JACKETS, SOCKS, OUTERWEAR, SWEATERS, SWIM TRUNKS, SHORTS, BAGS, CAPS, SHOES AND DENIM, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 7-1-1996; IN COMMERCE 7-1-1996.

OWNER OF U.S. REG. NOS. 1,334,456, 1,665,110 AND OTHERS.

"OSCAR DE LA RENTA" IS THE NAME OF A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

SER. NO. 75-188,107, FILED 10-28-1996.

ELIZABETH A. DUNN, EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

## United States Patent and Trademark Office

Reg. No. 3,303,388
Registered Oct. 2, 2007

## TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)

550 SEVENTH AVENUE

NEW YORK, NY 10018

FOR: WOMEN'S CLOTHING , NAMELY, BLOUSES, SHIRTS AND T-SHIRTS, SWEAT SHIRTS, TOPS, HALTER TOPS AND TANK TOPS, FLEECE PULLOVERS, PANTS, SWEAT PANTS, SLACKS AND JEANS, SKIRTS, SHORTS, LEGGINGS, COATS, SWEATERS, SUITS, DRESSES, BLAZERS, JACKETS, LEATHER JACKETS AND DENIM JACKETS, VESTS, LINGERIE, BRAS, PANTIES, CAMISOLES, SHOES, SCARVES, SWIMWEAR AND COVERUPS, SLEEPWEAR, ROBES, NIGHTGOWNS, NIGHT SHIRTS, PAJAMAS, SLEEP SHIRTS, LOUNGEWEAR; MEN'S CLOTHING, NAMELY JACKETS, BLAZERS, PANTS, SHIRTS, VESTS, TIES, BELTS, RAIN JACKETS, SOCKS, SWEATERS, SWIM TRUNKS, SHORTS, CAP, SHOES, SWIMWEAR; CHILDREN'S AND INFANT CLOTHING, NAMELY, SHIRTS, AND T-SHIRTS, PANTS, JEANS, SKIRTS, SHORTS, LEGGINGS, COATS, JACKETS AND SWIMWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 7-0-2004; IN COMMERCE 3-0-2005.

OWNER OF U.S. REG. NOS. 922,367, 2,553,215, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPANY", APART FROM THE MARK AS SHOWN.

THE NAME "OSCAR DE LA RENTA" IDENTIFIES A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

THE COLOR(S) RED AND WHITE IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE COLOR OF THE BACKGROUND IS RED AND THE COLOR OF THE LETTERS IN THE MARK IS WHITE.

THE DESIGN PORTION OF THE MARK CONSISTS OF A STYLIZED DEPICTION OF THE LETTER "O".

SN 78-358,201, FILED 1-27-2004.

DAVID HOFFMAN, EXAMINING ATTORNEY

Int. Cl.: 24

Prior U.S. Cls.: 42 and 50

**United States Patent and Trademark Office**

Reg. No. 3,283,357
Registered Aug. 21, 2007

## TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)
550 SEVENTH AVENUE
NEW YORK, NY 10018

FOR: BED SPREADS, QUILTS, DUVETS, PILLOW CASES, SHAMS, BED SKIRTS, BED SHEETS, BED LINENS, BED PADS, BED BLANKETS, BLANKET THROWS, COMFORTERS, CUSHION COVERS, DRAPERIES, TABLE LINENS; TABLE LINENS, NAMELY, TABLE CLOTHS, PLACEMATS, NAP-KINS, RUNNERS AND UNFITTED FABRIC COV-ERS, IN CLASS 24 (U.S. CLS. 42 AND 50).

FIRST USE 5-0-2003; IN COMMERCE 5-0-2004.

OWNER OF U.S. REG. NOS. 922,367, 2,553,215, AND OTHERS.

THE NAME "OSCAR DE LA RENTA" IDENTI-FIES A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

SN 76-573,195, FILED 1-23-2004.

KELLY MCCOY, EXAMINING ATTORNEY

Int. Cl.: 18

Prior U.S. Cls.: 1, 2, 3, 22, and 41

**United States Patent and Trademark Office**

Reg. No. 3,307,716
Registered Oct. 9, 2007

## TRADEMARK
### PRINCIPAL REGISTER



OSCAR DE LA RENTA, LTD. (NEW YORK CORPORATION)
550 SEVENTH AVENUE
NEW YORK, NY 10018

FOR: HANDBAGS, TOTES, WALLETS, COIN PURSES, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 12-0-2004; IN COMMERCE 7-0-2006.

OWNER OF U.S. REG. NOS. 922,367, 2,553,215, AND OTHERS.

THE NAME OSCAR DE LA RENTA IDENTIFIES A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

THE MARK COMPRISES A DESIGN SIMULATIVE OF A SCRIPT LETTER"O" ABOVE THE WORD "OSCAR" ON A SQUARE BACKGROUND COLORED RED.

SN 76-505,716, FILED 4-11-2003.

INGA ERVIN, EXAMINING ATTORNEY